IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cr-30034 |
| | ) | |
| ERICA MILLER, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Erica Miller's Second Amended Motion for Compassionate Release (d/e 57) requesting a reduction in her term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is GRANTED.

**I. BACKGROUND**

On July 11, 2018, Defendant pled guilty to health care fraud, in violation of 18 U.S.C. § 1347(a)(1). On November 22, 2019, the Court sentenced Defendant to 15 months' imprisonment and 3 years of supervised release. The Court also ordered Defendant to pay $101,960.83 in restitution.

Defendant is currently serving her sentence at the satellite camp adjacent to FCI Pekin and has a projected release date of March 10, 2021.  As of July 30, 2020, the Bureau of Prisons (BOP) reports that FCI Pekin has had three confirmed cases of COVID-19.

According to the Presentence Investigation Report (PSR) prepared for Defendant's sentencing, Defendant was diagnosed with hypertension in 1998 and takes medication to treat this condition. PSR (d/e 31), ¶ 53.  The PSR also notes that Defendant has reported having suffered from asthma since childhood and being prescribed an albuterol inhaler.  Id. ¶ 57.

On April 22, 2020, Defendant filed a pro se motion for compassionate release (d/e 45) pursuant to 18 U.S.C. § 3582(c)(1)(A).  On April 28, 2020, following the appointment of the Federal Public Defender's Office to represent Defendant, an Amended Motion for Compassionate Release (d/e 48) was filed. Defendant requested compassionate release due to her asthma, her hypertension, and the COVID-19 pandemic.

On April 30, 2020, the Government filed a Response Opposing Defendant's Amended Motion for Compassionate Release (d/e 51). That same day, the Court held a hearing on Defendant's amended

motion via video conference. The following day, another video hearing was held. The Court denied Defendant's compassionate release motions in an Opinion (d/e 54) entered on May 1, 2020.

On July 22, 2020, Defendant filed another pro se motion for compassionate release (d/e 55) pursuant to 18 U.S.C. § 3582(c)(1)(A). Following the reappointment of the Federal Public Defender's Office to represent Defendant, a Second Amended Motion for Compassionate Release was filed. Defendant, who is 48 years old, notes that, unlike when her initial request for compassionate release was denied, there are now confirmed cases of COVID-19 at FCI Pekin. Defendant argues that this development, given her health issues, warrants compassionate release.

If released from custody, Defendant proposes to reside with her daughter and grandson in a house that has a bedroom in the basement. The United States Probation Office, in a Memorandum (d/e 49) addressing Defendant's request for compassionate release, concludes that Defendant's daughter's house appears to be a suitable residence for Defendant. The Memorandum also notes that Defendant has not been disciplined by the BOP while in custody.

On July 28, 2020, the Government filed a Response Opposing Defendant's Second Amended Motion for Compassionate Release (d/e 59). The Government argues that Defendant should not be granted compassionate release based on just two confirmed cases of COVID-19 at FCI Pekin. The Government notes that Defendant tested negative for COVID-19 just 20 days ago.

On July 29, 2020, the Court held a hearing on Defendant's second amended motion for compassionate release via video conference. At the hearing, defense counsel noted that Defendant uses two different inhalers to treat her asthma. Defendant stated that a female inmate in her unit had been diagnosed with COVID-19. Defendant also noted that the BOP had not provided her with a CPAP machine to address her sleep apnea. The Court scheduled another hearing for July 30, 2020, and asked the Government to investigate Defendant's claims.

At the hearing on July 30, 2020, counsel for the Government indicated that two female inmates at the satellite camp adjacent to FCI Pekin had recently tested positive for COVID-19. Counsel for the Government also noted that both women had tested negative for COVID-19 on several occasions around the time of their positive

tests and that neither woman is currently incarcerated at the satellite camp.

On the issue of the CPAP machine, counsel for the Government stated that, although a doctor wrote an order for a CPAP machine for Defendant in May 2020, the BOP never provided a CPAP machine to Defendant. A CPAP machine is scheduled to be delivered to Defendant on July 31, 2020. Defendant advised that she is 5 feet, 7½ inches tall and weighs 220 pounds.

## II. ANALYSIS

Generally, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now

allows an inmate to file a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate's request was received by the BOP, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Therefore, for Defendant to be eligible for compassionate release, the Court, after considering the factors set forth at 18 U.S.C. § 3553(a), must first determine that "extraordinary and compelling reasons" warrant a reduction in Defendant's term of

imprisonment.  Id.  The Court must then determine whether the reduction is "consistent with applicable policy statements issues by the Sentencing Commission."  Id.

A.  **Extraordinary and Compelling Reasons for Release**

Having considered the relevant factors set forth in 18 U.S.C. § 3553(a), the Court concludes that Defendant has established that extraordinary and compelling reasons warrant a reduction in her term of imprisonment.  The spread of COVID-19 presents extraordinary and unprecedented challenges for the country and creates a serious issue for prisons.  Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation.  Socially distancing can be difficult for individuals living in a prison.

Based on the height and weight that Defendant provided, her body mass index (BMI) is 33.9.  The CDC's current position is that people with a BMI of 30 or higher are at increased risk of severe illness from COVID-19.  Certain Medical Conditions and Risk for Severe COVID-19 Illness, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-

extra-precautions/people-with-medical-conditions.html (last accessed July 30, 2020). According to the CDC, Defendant's hypertension and asthma, the latter of which requires her to use two inhalers, may also increase the risk that COVID-19 poses to her. Id. Given the current confirmed cases of COVID-19 at FCI Pekin and the fact that two female inmates at the satellite camp adjacent to FCI Pekin recently tested positive for COVID-19, Defendant's presence at the satellite camp puts her at increased risk of contracting COVID-19.

In addition, Defendant has not been disciplined by the BOP while in custody and is scheduled to be released in just over seven months. Defendant's sentence was imposed pursuant to a conviction for fraud, and Defendant has a daughter who is willing to allow Defendant to live with her if Defendant is released.

B.   **Sentencing Commission Policy Statements**

A reduction of Defendant's term of imprisonment is consistent with the Sentencing Commission's policy statements. The relevant policy statement, § 1B1.13 of the Sentencing Guidelines, explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in

18 U.S.C. § 3553(a)," that "(1)(A) extraordinary and compelling reasons warrant the reduction; . . . (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement."  U.S.S.G. § 1B1.13.

The commentary to § 1B1.13 provides certain circumstances constituting "extraordinary and compelling reasons" that warrant a sentence reduction.[1]  U.S.S.G. § 1B1.13 cmt. n.1.  One of the circumstances is where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).  Another circumstance is where "an extraordinary and compelling reason other than, or in combination with," the listed circumstances is present.  U.S.S.G. § 1B1.13 cmt. n.1(D).  Defendant's health issues and the COVID-19 pandemic create an extraordinary and compelling reason that

---

[1] Section 1B1.13 of the Sentencing Guidelines has not been amended to reflect the First Step Act's amendment to 18 U.S.C. § 3582(c)(1)(A).  As it stands, § 1B1.13 refers to a reduction "upon the motion of the Director of the Bureau of Prisons."  No policy statement provides guidance for when a defendant files a motion.  Nevertheless, the Court considers § 1B1.13.

warrants a reduction of Defendant's term of imprisonment.

The Court also considers whether Defendant is a danger to the safety of any other person or to the community.  See U.S.S.G. § 1B1.13.  If Defendant quarantines herself at her daughter's house away from her daughter and grandson, the quarantine will diminish the risk of spreading the virus.  Otherwise, the Court does not find that Defendant, who is serving a sentence for a nonviolent fraud offense, poses a danger to the community.

Defendant has established that extraordinary and compelling reasons warrant a reduction in her term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A).  Such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.  Accordingly, Defendant has satisfied the requirements to be eligible for compassionate release, and the Court finds that compassionate release is appropriate in this case.

### III. CONCLUSION

For the reasons set forth above, Defendant Erica Miller's Second Amended Motion for Compassionate Release (d/e 57) is GRANTED.  The Court hereby reduces Defendant's term of imprisonment from 15 months to time served plus 72 hours.  The

Court modifies Defendant's conditions of supervised release to require Defendant to spend six months on home confinement, with the home confinement starting as soon as possible after her term of supervised release begins.  Defendant shall spend the first 14 days of her term of home confinement in self-isolated quarantine.  While on home confinement, Defendant shall be monitored by telephone until the United States Probation Office can implement electronic monitoring.  All other aspects of Defendant's sentence shall remain the same.  Defendant's pro se motion for compassionate release (d/e 55) is DENIED as MOOT.

The Bureau of Prisons, or the entity administering the COVID-19 tests at FCI Pekin and the adjacent satellite camp, is DIRECTED to immediately test Defendant for COVID-19.  Defendant must test negative for COVID-19 before she is released from BOP custody.

The Clerk is DIRECTED to send a copy of this Opinion to FCI Pekin.  Defendant shall travel to Peoria, Illinois, in a vehicle that allows her to follow the CDC's social distancing guidelines, which include staying at least six feet from others and wearing a face mask and gloves.

ENTER:  July 30, 2020

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE